UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEONOR CHAVEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. H-12-cv-281 |
| | § | |
| HILTON MANAGEMENT, L.L.C., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment (Dkt. 46) filed by
Defendant, Steve Beyer Productions, Inc. ("Steve Beyer Productions"). Plaintiff, Leonor
Chavez ("Chavez"), filed a Response in Opposition (Dkt. 68). Steve Beyer Productions
then filed a Reply (Dkt. 69), and a hearing was held. After considering the pleadings, the
arguments of the parties, and applicable legal authorities, the Court **GRANTS** summary
judgment in favor of Steve Beyer Productions.

## BACKGROUND

Chavez, a Hilton Americas Hotel catering employee, alleges that she was injured
while working during a holiday party for Men's Wearhouse, a national clothing company.
The event was one of a series of such events that Men's Wearhouse contracted with Steve
Beyer Productions to produce at various locations throughout the United States.[1]  Steve

---

[1] Deposition of Steve Beyer, Dkt. 68-1 at 2.

Beyer Productions subcontracted the production of many of these events, including the one at which Chavez was injured, to another company, Walden Media.[2]

Chavez alleges that she was seriously injured when she tripped and fell over the leg of a projection screen during the event.  Chavez asserts that she incurred an extensive list of damages, including past and future physical pain and suffering; past and future "emotional pain torment and suffering (mental anguish);" past and future physical impairment, physical disfigurement, and "loss of physical ability;" past and future medical expenses; and lost wages.[3]  Subsequently, Chavez filed suit in state court against Defendants Hilton Management, L.L.C. ("Hilton Management") and Steve Beyer Productions, asserting a negligence claims for premises liability.

Steve Beyer Productions removed the case to this Court and filed a third-party complaint against Walden Media, claiming Walden Media was solely responsible for any injuries sustained by Chavez.  Although Walden Media answered and has appeared in this case, Chavez has not amended her pleadings to assert any claims directly against Walden Media.  Since Chavez has now dismissed all of her claims against Hilton Management.  Steve Beyer Productions is the sole remaining defendant in Chavez's suit.

Steve Beyer Productions now seeks summary judgment in its favor regarding Chavez's claims against it.  Steve Beyer Productions argues that it did not control the

---

[2] Deposition of Joseph Walden, Dkt. 68-2 at 3.
[3] Dkt. 1 at 15 ¶ 6.1.

production of the holiday event and it therefore did not owe Chavez any duty of care required to establish a negligence claim in this case.

## STANDARD OF REVIEW

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## ANALYSIS

While Chavez's state court petition asserts a number of different theories to support her negligence claims against Steve Beyer Productions, Chavez's pleadings reflect that she is asserting a negligence claim for premises liability against this defendant.[4]

### A.    Premises Liability and the Question of "Control"

In the context of premises liability, negligence means the "failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care

_____

[4] Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket 68, & 4.4 (stating, "This is a premises defect case.").

4

should know about." *Olivares v. Mares*, 390 S.W.3d 608, 616-17 (Tex. App.–Dallas 2012, no pet.) (citing *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998)). The existence of a legal duty owed to her by Steve Beyer Productions is a threshold requirement for Chavez's negligence claim to succeed, and "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). Texas courts have clearly stated the type of relationship necessary to create a duty of care and the scope of this duty.

> One 'special relationship' that gives rise to a duty to take action to prevent harm to others is the relationship between a premises owner or operator and those present on the premises; within this context, the law imposes a duty on the premises owner or operator to take action to make the premises reasonably safe or to warn invitees and licensees of an unreasonable danger. The law imposes this same duty on a general contractor in control of the premises. But the Texas Supreme Court has never extended the duty to warn or make safe to defendants who did not own, occupy, or control the premises at the time of the plaintiff's injury.

*Jenkins v. Occidental Chemical Corp.*, No. 01–09–01140–CV, 2013 WL 556388, 11 (Tex. App.—Hous. [1st Dist.] Feb. 14, 2013, no pet.) (internal citations omitted); *see also Keller v. Foreman*, 343 SW. 3d. 420, 426 (Tex. 2011) (noting premises liability requires proof defendant "owned, occupied or controlled premises" and general contractor who "maintains control" is "charged with same duty as owner or occupier"). Accordingly, the question of whether Steve Beyer Productions owed Chavez any duty begins with an analysis of Steve Beyer Production's control over the premises upon which she was injured.

It is undisputed that Chavez was a Hilton employee at the time of her injury and that Hilton allowed Men's Wearhouse to host an event at its hotel. Men's Wearhouse hired Steve Beyer Productions to produce that event, and Steve Beyer Productions hired Walden Media as its subcontractor. It is also undisputed that Walden Media, an independent contractor, was the company that actually erected the projector screen over which Chavez tripped and injured herself.

Under Texas law, "an independent contractor has sole control over the means and methods of the work to be accomplished, . . . [and] the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person." *Gilbert v. Outback Steakhouse of Fla., Inc.*, 295 Fed. App'x 710, 715 (5th Cir. Tex. 2008) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)); *see also Abarca v. Scott Morgan Residential, Inc.*, 305 S.W. 3d 110, 126 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (noting, "[g]enerally a general contractor does not have duty to see that a subcontractor performs its work in a safe manner"). However, "a limited duty arises if a general contractor retains control over a subcontractor's methods of work or operative details to the point the subcontractor is not entirely free to do work in his own way." *Abarca*, 305 S.W. 3d at 126; *Gilbert*, 295 Fed. App'x at 715. A plaintiff can prove the general contractor's "right to control" in one of two ways: first, by a written contract explicitly assigning the general contractor a right to control: or, second, in the absence of such a written provision, by producing evidence that the general contractor actually exercised control over the manner in which the

6

independent contractor performed its work.  *General Elec. Co. v. Moritz*, 257 S.W. 3d 211, 218 (Tex. 2008); *see also Abarca*, 305 S.W. 3d at 126.

The burden of proving the second type, *i.e.*, the exercise of "actual control," is a heavy one.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Barker v. Hercules Offshore, Inc.*, 2012 U.S. Dist. LEXIS 16326 (S.D. Tex. Feb. 8, 2012).   First, the plaintiff must show the general contractor had the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor was not entirely free to do the work his own way.  *See Abarca*, 305 S.W.3d at 124 (citing *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).   Second, the control must relate to the injury the negligence causes.  *Abarca*, 305 S.W.3d at 124.   It is not enough that the general contractor has the right to order the work to stop and start or to inspect progress or receive reports, nor is it enough to recommend a safe manner for the independent contractor's employees to perform the work.  *Id.*

Additionally, the "possibility of control is not evidence of the right to control." *Coastal Marine Serv. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999); *see also Wood v. Phonoscope, Ltd.*, 2004 Tex. App. LEXIS 4730 (Tex. App.—Houston [1st Dist.] May 27, 2004, no pet.) ("a **mere possibility of control** does not establish that a contractor actually retained or exercised a right of control" (emphasis in original)).   Even the presence of a representative on site to observe an independent contractor's work does not evidence actual control.  *See Barker*, 2012 LEXIS at 16 (citing *Koch Refining Co. v. Chapa*, 11

S.W.3d 153, 157 (Tex. 1999)).[5]  In sum, a "defendant's duty *is commensurate with the control it retains* over the independent contractor's work." *General Elec. Co.*, 257 S.W.3d at 216 (emphasis in original).

In this case, since Steve Beyer Productions and Walden Media operated under an oral contract, the issue before the Court is "actual control."  To resolve the pending motion for summary judgment, the Court must determine whether there is a genuine issue of material fact as to whether Steve Beyer Productions exercised "actual control" over the manner in which Walden Media's employees performed the work that allegedly caused Chavez's injury—that is, the set-up of the projection screens at the event.  Steve Beyer Productions contends the evidence in the summary judgment record shows that it did not exercise "actual control" over Walden Media's placement of the screens, and it therefore did not owe any duty to Chavez as a matter of law.  Chavez contends that Steve Beyer Productions is not entitled to summary judgment because the evidence raises a fact issue as to whether Walden Media, or Steve Beyer Productions, or both, retained control over the manner in which Walden Media erected the projection screens.

### B.   Summary Judgment Evidence

Both parties rely on the depositions of Steve Beyer and Joseph Walden to support their contentions.  The depositions, in their entirety, have been entered into the summary

---

[5] The First Court of Appeals recently noted, "Essentially, the evidence must give rise to an inference that the supervising entity specifically approved the dangerous act [that caused the injury]."  *Abarca*, S.W.3d at 124; *see also Dow Chem.*, 89 S.W.3d at 609 ("[W]e have never concluded that a general contractor actually exercised control of a premises [when] there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act.")

8

judgment record and reviewed by the Court. In addition, Steve Beyer Productions has introduced affidavit testimony to support its motion for summary judgment. No objection has been raised to the admission of the depositions or the affidavit.

### 1.    Steve Beyer's Deposition

Steve Beyer testified that his company, Steve Beyer Productions, is a "talent agency and production company" that mainly produces "corporate shows."[6]    Steve Beyer's his role as President is "sales primarily."[7]    In 2009, Steve Beyer Productions contracted with Men's Wearhouse to produce approximately thirty-nine holiday events, and agreed to "provide production services to create these parties[,] and get the equipment from town to town."[8]    Beyer described the equipment as "entertainment environments," including performance areas, technical components, curtains, sound systems, temporary lighting, projection screens and staff to operate the equipment.[9] Steve Beyer Productions then verbally subcontracted with Walden Media:

> Q:  What were the terms of your verbal agreement, as you understand them with Walden Media?
>
> A:  We were to pay Walden Media a certain fee for executing all the details of the production services.
>
> Q:  So everything that you were hired by or contracted by Men's Warehouse (sic) to perform in Houston, you then subcontracted that out to Walden Media?

---

[6] Deposition of Steven Beyer, Dkt. 73 at 10, 11.

[7] *Id.*

[8] *Id.* at 16, 18, 19.

[9] *Id.* at 16.

A:  That's correct.[10]

Steve Beyer testified that "the expectation was that [Walden Media] would coordinate and install and do everything related to the production of these events," and that his company did not have "that capability." [11]  Beyer explained, "We don't own the equipment and we don't have the labor."[12] He specifically testified that Steve Beyer Productions did not own the projector screens used at the event.

Although the oral contract with Walden Media did not specifically disclaim any control over the work,[13] Steve Beyer stated he had never inspected the work done by Walden Media at these events.  He explained that was because he considered Walden Media's expertise in the production of such events to be greater than that of his own company.[14]  For this reason, he testified his role was limited to relaying messages between the client, *i.e.*, Men's Wearhouse, and the subcontractor, Walden Media, if asked to do so—which, he stated, has "never happened."[15]  When asked whether Men's Wearhouse "could" call Steve Beyer Productions about the events, he answered:

> A: No. I mean, I wouldn't tell Joe or Walden Media how to do their job because I don't have the expertise to tell them how to do it.  If there was something that Men's Warehouse [sic] was telling me, I would relay it to them.

---

[10] *Id.* at 18.
[11] *Id.* at 18-19.
[12] *Id.*
[13] *Id.* at 25.
[14] *Id.* at 23-24.
[15] *Id.* at 21-22.

Q: So, if Men's Warehouse [sic] told you I don't like the way the staging is, it's being done x way, but we want it y way, would you then call Walden Media or any of its employees or contractors or owners and say Men's Warehouse [sic] doesn't like it being done X, I want you to do it or they want you to do it?

A: It would be speculation.  It never happened.

Q: Is it your understanding that you could do that if you were called upon?

A:  If Men's Warehouse [sic] told me that something was wrong or they wanted it done a certain way, I would relay the message to Walden Media.[16]

When Chavez's attorney asked Steve Beyer directly if he would "go over there and tell [Walden Media] how to do it?", Steve Beyer replied he "wouldn't go on site and say what to do."[17]  Steve Beyer testified he was not in Houston on the night of the event, and that he had never seen a diagram of the ballroom where the event was held.[18] According to Steve Beyer, Steve Beyer Productions worked solely in the capacity of an "agent" on the Men's Wearhouse events.[19]

## 2.     Joe Walden's Deposition

Joe Walden's deposition mirrored Steve Beyer's testimony.  Joe Walden testified that his company, Walden Media, was hired by Steve Beyer Productions to set up the

---

[16] *Id.* at 23-24.
[17] *Id.* at 26.
[18] *Id.* at 14.
[19] *Id.* at 21.

11

"production elements" for approximately thirty-nine Men's Wearhouse events.[20] Walden Media's role for each event was to receive, set up, operate and tear down the stage, sound, lights and video elements.[21]

Chavez particularly relies on Walden's statements that, although his employees provided the labor at the Houston event, Walden's understanding of the oral subcontract was that Steve Beyer Productions retained some degree of control over the event. However, the exchange to which Chavez points actually indicates that *Walden Media* and *Men's Wearhouse* were the final decision-makers—not Steve Beyer Productions:

> Q: Under your agreement, of under [sic] your understanding of the agreement, did Steve Beyer or Steve Beyer Productions have the ability to call you and tell you, I want the stage put at this particular spot, I want the lighting hung in this particular space?
>
> A: Did they have the ability to do that?
>
> Q: Yes.
>
> A: I would say they could, although our agreement had it set up where the Men's Wearhouse had ultimate say over everything.
>
> Q: What about Men's Wearhouse was in the agreement?
>
> A: We were just told if they want something, give it to them.[22]

---

[20] Deposition of Joseph Walden, Dkt. 68-2 at 3-4, 7.

[21] Deposition of Joseph Walden, Dkt. 68-2 at 3-4, 7.

[22] *Id.* at 6-7.

Chavez contends this testimony raises a genuine issue of material fact as to whether Steve Beyer Productions did, in fact, have "actual control" over the premises. When reviewed in context, however, Walden's testimony comports with Steve Beyer's explanation that Men's Wearhouse, as the client, had the final authority regarding the production. Likewise, Joe Walden also specified that Walden Media set up the projector screen over which Chavez tripped.

> Q:  Did Nick [a Walden Media employee] ever tell you that Walden Media set up or that he or one of his crew set up that projector leg that Ms. Chavez tripped over?
>
> A: Yes.
>
> [Defendant's Attorney]: Hearsay
>
> A: Yes.
>
> Q: So it's a fair statement that Nick told you that he or a member of his crew set up the projector leg that Ms. Chavez tripped over; is that a fair statement?
>
> A: Let's clarify here.  Projector or the screen?  The screen is different than the projector.
>
> Q:  The projector screen that has a leg, did Walden Media set that up?
>
> A: Yes.

Next, Chavez points to a series of exchanges she contends are evidence that, at least in Joe Walden's mind, Steve Beyer Productions retained some degree of control over the set-up of the event.

> Q: So you understood that Steve or somebody at Steve Beyer
> Productions could call you or that they retain the right to call
> you and tell you, hey, we don't like where that stage is, please
> move it?  Did they have the right to do that?
>
> A: They had the ability to call and tell us to move something,
> yes.
>
> Q: And they have the ability to call you and tell you, for
> example, Men's Wearhouse doesn't like where the lights re
> hung.  Can you please move them to X and Y location?  Did
> they have that ability?
>
> A: Yes.
>
> Q: Steve Beyer Productions had the right to call you and tell
> you to move the curtains, we don't [sic] where there [sic]
> hung; is that a fair statement?
>
> A: That's right, yes.[23]

Similar exchanges of hypothetical questions and answers occurred regarding the

placement of gaffe tape, colored tape, and projectors during the event.  Each time, Joe

Walden answered in his opinion, Steve Beyer Productions "could" have called him and

told Joe Walden to change a particular part of the event set-up.  The exchange concluded:

> Q: So, as far as you're concerned, Steve Beyer Productions,
> or Steve Beyer himself retained the right to tell you how to do
> your work; is that correct?
>
> A: Yes.

---

[23] *Id.* at 8-9.

14

Chavez argues that this raises a genuine issue of material fact as to whether Steve Beyer Productions exercised "actual control" over the event at which she was injured. The Court disagrees.

### C.    Steve Beyer Productions did not have "Actual Control"

Walden's answers to a series of hypotheticals questions, even when coupled with his testimony that he believed Steve Beyer Productions "retained the right to tell [Walden Media] how to do [its] work," are not sufficient to raise a genuine issue of material fact as to whether Steve Beyer Productions retained "actual control" over the event at issue. First, the question of control is a question of law reserved to the Court, and the opinions offered by Walden, an interested lay witness, about various hypothetical scenarios are not sufficient to raise a genuine issue of material fact in this case. *See, e.g., Smith v. Sw. Bell Tel. Co.*, 2012 WL 28256, at *3 (5th Cir. Jan. 5, 2012) (per curiam) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."). Further, even if Walden's statements were clear, direct and free of ambiguity, Texas law is clear that a "mere possibility" of control is insufficient to prove an actual right to control. *Wood,* 2004 Tex. App. LEXIS 4730 (citing *Coastal Marine Serv.*, 988 S.W.2d at 226).

The summary judgment evidence shows that it was Walden Media, not Steve Beyer Productions, who controlled the manner in which Walden Media placed and maintained the equipment. Steve Beyer testified that Walden Media was responsible for the complete set-up, operation, and take-down of the entire production. Both Joe Walden

15

and Steve Beyer also testified that Steve Beyer Productions directed Walden Media to follow any instructions given by Men's Wearhouse. Steve Beyer Productions was neither on-site nor directing the actual production of the event in question. Finally, there is no summary judgment evidence that Steve Beyer "actually controlled" the placement of the projector leg at issue. Because the right to control must relate to the activity that caused her injury, Chavez has not produced sufficient evidence to survive summary judgment. *Dow Chem.*, 89 S.W. 3d at 607.

### Conclusion

The Court finds that the evidence presented fails to raise a genuine issue of fact as to whether Steve Beyer Productions retained sufficient control to create duty of care to Chavez in this case. Accordingly, the Court **GRANTS** Steve Beyer Productions' Motion for Summary Judgment. It is so **ORDERED**.

SIGNED at Houston, Texas on the 5th day of June 2013.

GEORGE C. HANKS, JR.
UNITED STATES MAGISTRATE JUDGE

16